O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY PAUL MICCI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>　　　　Defendant. | NO. EDCV 13-1646-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

　　Plaintiff filed a Complaint on September 27, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (ECF No. 3.) On November 4, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 11.)  The parties filed a Joint Stipulation on June 16, 2014, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  (ECF No. 15.)  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of DIB on January 4, 2010. (Administrative Record ("A.R.") 154-57.) He filed an application for SSI on April 28, 2010. (*Id.* 158-62.) Plaintiff, who was born on October 24, 1951[1] (*id.* 154, 158), claims to have been disabled since November 1, 2007 (*id.* 67). Plaintiff has past relevant work ("PRW") experience as a social service aide and an executive director. (*Id.* 30.)

After the Commissioner denied plaintiff's claim initially and upon consideration, plaintiff requested a hearing. (A.R. 21.) On November 4, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Lawrence J. Duran (the "ALJ"). (*Id.* 21, 30, 49-85.) Vocational expert ("VE") Troy L. Scott also testified. (*Id.* 76-84.) On May 4, 2012, the ALJ denied plaintiff's claim (*id.* 21-30), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 10-13). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his May 4, 2012, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, and plaintiff has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date of his disability. (A.R. 23.) The ALJ determined that plaintiff has the severe impairments of: multiple pelvic fractures; status post orchiectomy; intervertebral canal stenosis at C5-C6; and moderately severe diffuse lung emphysema. (*Id.*) The ALJ also found that plaintiff's mental impairments, which include a personality disorder not otherwise specified and a history of drug addiction and

---

[1] On the alleged disability onset date, plaintiff was 56 years old, which is defined as a person of advanced age. 20 C.F.R. § 404.1563(e).

2

alcoholism, are not severe. (*Id.* 23-24.) The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 26.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as follows: "he can occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; he can stand and walk two hours in an eight-hour workday and sit for six hours in an eight-hour workday; he needs a sit and stand option in 30 minute intervals; he can occasionally balance, stoop, and climb stairs; and he can never crouch, kneel, or climb ladders, ropes, and scaffolds." (A.R. 26.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record. (*Id.* 26-30.)

Based on the testimony of the VE, the ALJ concluded that plaintiff is capable of performing his past relevant work as a social service aide, as generally and actually performed, and an executive director, as generally and actually performed. (A.R. 30.)

Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since November 1, 2007, the alleged onset date, through May 4, 2012, the date of the ALJ's decision. (A.R. 30.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims that the ALJ erred in failing to properly consider: (1) the severity of plaintiff's mental impairments; and (2) plaintiff's subjective complaints of pain. (Joint Stip. at 4.) Because the Court finds that remand is warranted on the first issue in dispute -- the ALJ's

consideration of plaintiff's mental impairments -- the Court does not fully and separately address plaintiff's second contention, but the ALJ may need to revisit his credibility determination on remand, especially in view of any change in the assessment of the severity of plaintiff's mental impairments.

## I.   Step Two Of The Sequential Analysis

Plaintiff's first contention is that the ALJ erred at step two of the sequential analysis in finding that plaintiff does not have a severe mental impairment.  (Joint Stip. at 4-8.)  The regulations define a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," which include, *inter alia*: "physical functions such as walking, standing, sitting, lifting . . . [;] capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521, 416.920(c), 416.921.  "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).  If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Id.* at 687 (citation and internal quotation marks omitted).  "Step two, then, is a de minimis screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is *clearly established* by medical evidence."  *Id.* (emphasis added) (citations and internal quotation marks omitted).

Here, the ALJ based his decision at step two of the analysis primarily on the opinions of the consultative examining psychiatrist, Kent Jordan, M.D., and the State agency reviewing

psychiatrist, R. Paxton, M.D. (*See* A.R. 25.)  Plaintiff contends that the ALJ did not properly consider contradictory findings in the record, particularly the treating notes and mental disorder questionnaire submitted by plaintiff's therapist, John Viola, L.C.S.W., who treated plaintiff for his mental impairments in 2011 and 2012.  (Joint Stip. at 4-8.)  Defendant argues that the ALJ articulated valid reasons for giving little weight to Viola's opinion and, further, that any error was harmless.  (*Id.* at 8-12.)  Having carefully reviewed the record, the Court concludes that the absence of a severe mental impairment was not clearly established, and thus, the ALJ's analysis of plaintiff's mental impairments should not have ended at step two.

## II. The Relevant Medical Evidence.

The Court looks first at the opinion of Dr. Jordan, who examined plaintiff on July 23, 2010. Plaintiff reported to Dr. Jordan that he suffers from serious depression, occasional flashbacks to being in Vietnam, anxiety, and loss of sleep.  (A.R. 281.)  He stated that his depression and anxiety began approximately five years earlier when his marriage ended, he lost his job, and he began drinking heavily again.  (*Id.*)  Plaintiff reported that he stopped drinking only two months before his examination with Dr. Jordan.  (*Id.* 282.)  He reported that he: gets food stamps; does his own shopping and food preparation; does his own chores; goes to 12-Step meetings three times a week; and has no close friends but is trying to make friends with other recovering alcoholics.  (*Id.* 283.)  He reported having very limited relationships with his family.  Specifically, plaintiff reported that he: is totally estranged from his daughter; very recently reconciled with his son, with whom he speaks on the phone once a month; and speaks to his brother three to four times a year by phone.  (*Id.*)  Plaintiff described himself as feeling "frustrated."  (*Id.*)

Dr. Jordan observed that plaintiff exhibited: an unkempt appearance; "mild brief irritability . . . [that was] well controlled"; "moderate increased levels of anxiety through most of the history taking" that "slowly normalized" through the emotionally neutral parts of the exam and ultimately became euthymic; and "one brief episode of labile increased tearfulness and sadness" when

talking about the loss of his last job.  (A.R. 280, 283-84.)  Dr. Jordan observed that plaintiff experienced some problems with concentration but no problems with:  thought process; thought content (*i.e.* no evidence of auditory or visual hallucinations); cognitive orientation and memory; abstract thinking; fund of knowledge; or insight and judgment.  (*Id.* 284.)  Dr. Jordan diagnosed plaintiff with:  "alcohol abuse intermittent and past[;]" "poly drug abuse . . . in remission"; and personality disorder, NOS. (*Id.* 285.)  He assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 65,[2] indicating mild symptoms or some difficulty in social, occupational, or school functioning.  (*Id.* 285.)  Dr. Jordan opined that plaintiff could:  perform detailed and complex tasks on a sustained basis; maintain regular attendance and perform work consistently; complete a normal workday and workweek; accept instructions from supervisors; interact with coworkers and the public adequately; and deal with the usual stressors of competitive employment.  (*Id.* 286.)

The other medical opinion to which the ALJ assigned great weight at step two of the analysis is that of the state agency psychiatrist, Dr. Paxton.  On August 7, 2010, Dr. Paxton conducted a review of plaintiff's mental health records.  (A.R. 287.)  It appears that the only mental health record available for Dr. Paxton to review was Dr. Jordan's July 23, 2010 examination.  (*Id.* 298-300.)  Plaintiff did not begin talk therapy with John Viola, L.C.S.W., until July 15, 2011, almost a year after Dr. Jordan's consultative examination and Dr. Paxton's medical record review.[3]  (*See* A.R. 366, 369.)

---

[2] A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32 (4th Ed. 2000) ("DSM-IV").  A GAF score between 61 and 70 denotes "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful personal relationships.").  *Id.* 34.

[3] A year and a half after Dr. Paxton's review, plaintiff also submitted records from Michael G. Galanis, M.D., a psychiatrist who briefly treated plaintiff for anxiety, depression, and insomnia a few months before plaintiff's alleged onset date.  (A.R. 371.)

Based on his review of Dr. Jordan's report, Dr. Paxton opined that plaintiff had at least one medically determinable mental impairment but no severe mental impairment. (A.R. 287.) Dr. Paxton did not adopt Dr. Jordan's diagnoses of plaintiff's mental impairments or otherwise identify a single mental impairment from which plaintiff suffered. Instead, according to Dr. Paxton's questionnaire, plaintiff does not have: a personality disorder (A.R. 292); a substance addiction disorder (*id.* 293); anxiety as evidenced by recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress (*id.* 291); depressive syndrome characterized by sleep disturbance, decreased energy, difficulty concentrating, and hallucinations or delusions (*id.* 289); or continuous or intermittent delusions or hallucinations (*id.* 288). Dr. Paxton also did not fill out the section of the questionnaire that asked him to assess the severity of plaintiff's functional limitations resulting from his mental impairment(s). (*Id.* 295.) The ALJ accorded Dr. Paxton's opinion great weight. (*Id.* 25.)

In contrast, the ALJ largely rejected the opinions of plaintiff's treating therapist, John Viola., L.C.S.W. The record contains Viola's treating notes from July 15, 2011, through April 11, 2012, as well as a mental disorder questionnaire completed by Viola on November 6, 2011. (A.R. 366-370, 377-79.) According to these records, plaintiff reported that he served 12 months with the U.S. Army in Vietnam and received an other than honorable discharge in 1972, for going AWOL and having a defiant attitude. (A.R. 366.) Plaintiff told Viola that he experienced substance abuse problems after his discharge and, in 1981, attended a drug rehabilitation program. (*Id.*) When plaintiff began treatment with Viola, in July 2011, plaintiff also reported that he had been homeless for several years and was staying with a friend. (*Id.*) During the course of his treatment with Viola, plaintiff expressed fear of his own memories (*id.* 366), his anger, and "what he might do" (*id.* 367). Viola's treating notes contain multiple references to plaintiff having flashbacks to traumatic experiences in Vietnam and difficulty working through his feelings about what he saw and did during the war. At his September 19, 2011 visit, plaintiff reported seeing the face of a child he killed in Vietnam. (A.R. 367.) On October 25, 2011, Viola wrote that he was working with plaintiff on "sharing responsibility for the horrors of Vietnam." (*Id.* 367.) On

January 31, 2012, plaintiff expressed sadness and guilt about what he saw in Vietnam. (*Id.* 378.) On February 15, 2012, Viola and plaintiff discussed plaintiff's "self-destructive behavior patterns to avoid memories of Vietnam," including plaintiff's alcohol consumption and fighting. (*Id.*) On March 14, 2012, plaintiff and Viola discussed finding a way for plaintiff to forgive himself for his experiences in Vietnam. (*Id.* 379.) On March 21, 2012, plaintiff reported having a severe flashback in church that was triggered by "a song with a melody that sounded like a funeral procession." (*Id.* 379.)

Viola's treating notes also suggest that plaintiff continued to abuse alcohol in the year preceding the ALJ's decision. On October 17, 2011, plaintiff reported that he was arrested in a bar fight (A.R. 367), and on March 9, 2012, plaintiff put sobriety at the top of his "goal list" (*id.* 368). Viola's treating notes also corroborate plaintiff's complaints of insomnia and anxiety. On November 21, 2011, plaintiff complained of "severe anxiety and panic after a series of nightmares" that rendered him unable to leave the house. (A.R. 378.) On April 11, 2012, plaintiff reported experiencing "insomnia, anxiety, and panic attack symptoms" for two weeks after having difficulties with a friend. (*Id.* 379.)

In the mental disorder questionnaire completed by Viola on November 6, 2011, Viola stated that plaintiff has: posttraumatic stress disorder, delayed onset; and major depressive disorder, recurrent moderate. (A.R. 369.) Viola assigned plaintiff a GAF score of 45, indicating serious symptoms or a severe impairment in social, occupational, or school functioning, and Viola stated that: plaintiff is "subject to impulsivity secondary to flashbacks and interpersonal stress"; plaintiff's affect is labile and he is frequently tearful; plaintiff presents with symptoms of anxiety and depression; and plaintiff is subject to "visual and auditory flashbacks." (*Id.*) Viola stated that plaintiff's flashbacks "present as if they were delusions or hallucinations but content is consistent with traumatic memories from Vietnam." (*Id.* 370.) Viola further observed that: plaintiff's depression interferes with his grooming and accomplishment of basic tasks; plaintiff's flashbacks and mood disturbance interfere with his concentration, motivation, task completion, and social

interaction; and plaintiff isolates when his depression is exacerbated. (*Id.* 370.) Finally, Viola stated that plaintiff has difficulty maintaining relationships with others and is subject to severe agitation and uncontrolled anger. (*Id.*) Viola opined that plaintiff's condition would prevent him from completing a 40-hour work week without special supervision and would affect his ability to make simple work-related decisions. (*Id.*)

The ALJ gave great weight to the opinions of Drs. Jordan and Paxton, finding "nothing of record to contradict the consultative examiner's opinions herein that [plaintiff] has a non-severe impairment." (A.R. 25.) The ALJ concluded that plaintiff's alcoholism and substance addiction were non-severe, because they were in remission. (*Id.* 24.) The ALJ added that he had considered Viola's mental questionnaire but gave it less weight, because it is not from an acceptable medical source and Viola's assessment "appears to be based primarily on [plaintiff's] subjective complaints," which the ALJ determined were "not fully credible" and "not supported by the totality of the medical evidence." (*Id.* 25.) However, as explained below, the ALJ erred in finding that plaintiff's alcoholism was in remission and in discrediting Viola's opinion.

### III. **The ALJ Erred In Finding That Plaintiff's Alcohol Abuse Was Non-Severe On The Ground That It Was In Remission**.

The record does not support the ALJ's finding that plaintiff quit drinking and using drugs a year prior to the hearing. To the contrary, Viola's treating notes show that: in October 2011, plaintiff was arrested in a bar fight, (A.R. 367); on February 15, 2012, Viola "confront[ed]" plaintiff about his "self-destructive behavior patterns," including his alcohol consumption (*id.* 378); and, on March 9, 2012, plaintiff put sobriety at the top of his "goal list" (*id.* 368). Plaintiff did not testify about his alcoholism and substance abuse at the hearing, and the ALJ did not cite any portion of the record in which plaintiff maintained being alcohol and drug free for approximately a year prior to the hearing. (*See generally id.* 24, 54-78.) Accordingly, the record does not "clearly establish" that plaintiff's diagnosis of "alcohol abuse intermittent and past" was, in fact,

in remission and, therefore, non-severe.

### IV. The ALJ Did Not Properly Consider The Opinion Of Plaintiff's Treating Therapist.

The ALJ also erred in discrediting Viola's opinion. The ALJ articulated three reasons for discrediting Viola's assessment of the severity of plaintiff's mental impairment: (1) it was not supported by the medical evidence; (2) Viola is not an accepted medical source; and (3) Viola's opinion was based primarily on plaintiff's subjective complaints, which the ALJ deemed not credible. As explained below, these reasons for discrediting Viola's assessment of plaintiff are not supported by the record.

#### A. The ALJ Erred In Finding That The Record Did Not Support Viola's Assessment.

Although the ALJ found that Viola's opinion was not supported by the medical evidence, there was substantial evidence in the record that supported Viola's assessment of the severity of plaintiff's mental impairments. Specifically, Dr. Jordan's report corroborated several of the functional limitations identified by Viola. Viola stated that plaintiff's mental impairments interfered with his grooming, accomplishment of basic tasks, and concentration, and that plaintiff is frequently tearful. (A.R. 369, 370.) These statements are supported by Dr. Jordan's observations that: plaintiff's appearance was unkempt; plaintiff experienced problems with concentration; and plaintiff exhibited irritability, increased levels of anxiety, and one episode of tearfulness during the examination. (*See id.* 280, 283-84.)

In addition, Viola identified several functional limitations caused by plaintiff's impairments that were supported by his treating notes, including self-isolation, visual and auditory hallucinations, and difficulty controlling anger that led, on occasions, to physical fights. (A.R. 370;

*see also id.* 367, 377, 378.) In support of these statements, Viola's treating notes show that plaintiff: missed one appointment with Viola, because he was unable to leave the house due to severe anxiety and panic following a series of nightmares (A.R. 378); saw the face of a child he killed in Vietnam (*id.* 367); had a severe flashback in church (*id.*379); has a tendency to challenge people to fights (*id.* 378); and was arrested after a bar fight (*id.*367).

Finally, Viola's treating notes show that plaintiff's complaints about his mental impairments to medical professionals have been consistent. Specifically, plaintiff has consistently stated that he experiences "flashbacks" to Vietnam, has difficulty sleeping, and has very limited social relationships. (*Compare* A.R. 367, 370, 378, 379 *with* 281, 283.)

Accordingly, substantial evidence in the record supported Viola's opinion about the severity of plaintiff's mental impairments. Specifically, there is medical evidence that strongly suggests that plaintiff is a Vietnam veteran who experiences auditory and/or visual hallucinations or flashbacks, insomnia, and bouts of self-isolation, and he has difficulty staying sober, grooming, concentrating, controlling his anger, and forming or maintaining social relationships, even with members of his own family.

**B.    The ALJ Erred In According Viola's Opinion Less Weight Than Dr. Paxton's Opinion On the Ground That Viola Was Not An Accepted Medical Source.**

The ALJ also erred in finding that Viola's assessment was entitled to less weight than Dr. Paxton's because Viola, a licensed clinical social worker, is not an accepted medical source. Agency regulations expressly permit an ALJ to consider a therapist's opinion in determining the severity of a claimant's impairment and whether the impairment affects the claimant's ability to work. 20 C.F.R. § 404.1513(d)-(e). Further, the ALJ must articulate "germane" reasons for rejecting Viola's opinion. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010);

S.S.R. 06-03p. Relevant factors when determining the weight to be given to an "other" medical source include: how long the source has known and how frequently the source has seen the plaintiff; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the plaintiff's impairments(s), and any other factors that tend to support or refute the opinion. S.S.R. 06-03p. "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

Here, Viola provided detailed answers to the mental disorder questionnaire and supported his answers with notes reflecting a nine month treatment relationship with plaintiff, during which time Viola saw plaintiff one to three times a month. (A.R. 366-70, 377-79.) In contrast, Dr. Paxton: never examined plaintiff; reviewed an incomplete record, which consisted solely of Dr. Jordan's report; failed to identify Dr. Jordan's diagnoses, even though those were the only relevant diagnoses in the record; and neglected to fill out most of the questionnaire. (*See id.* 287-300). Given that Dr. Paxton never examined plaintiff and failed to explain -- or even fully express -- his opinion, in this instance the opinion of Dr. Paxton, a psychiatrist, is entitled to less weight than the opinion of Viola, a social worker.

    **C.**    **The ALJ Erred In Rejecting Viola's Opinion On The Ground That It Was Based On Plaintiff's Less Than Credible Subjective Complaints.**

Finally, the ALJ erred in rejecting Viola's opinion on the grounds that it was based on plaintiff's less than credible subjective complaints, because the ALJ's reasons for finding plaintiff's subjective complaints less than credible are not germane to Viola's opinion. The ALJ articulated four reasons for discrediting plaintiff's subjective complaints: (1) plaintiff performed daily activities -- doing the laundry, washing dishes, going to church services, being involved as a volunteer at

his church, and shopping -- that entailed "physical and mental abilities and social interactions . . . necessary for obtaining and maintaining employment"; (2) plaintiff worked part-time as an in-home health care aide after his alleged onset date and on a "daily intermittent" basis helped out at his church; (3) plaintiff obtained only sparse and generally conservative treatment for his impairments; (4) plaintiff failed to take the medication (Vicodin) that was prescribed for his physical pain; and (5) plaintiff testified that "his memory was good, and his concentration was fair . . . he gets along with people for the most part, and he could perform complex and simple instruction tasks." (A.R. 27-28.)

The ALJ's first and second reasons for discrediting plaintiff's subjective complaints both concern plaintiff's daily activities after the alleged onset date, but these activities are not inconsistent with plaintiff's complaints about his mental impairments. Plaintiff testified that he did his own laundry, washed his dishes, attended church service on Sundays, volunteered at his church on an "intermittent daily" basis by sitting and talking with people or putting out pastries, and went shopping "two to three times a month." (*See* A.R. 57-60.) Plaintiff's ability to perform these modest activities is not inconsistent with his complaints of depression, anxiety, flashbacks, anger, and insomnia nor do these activities evidence that plaintiff's mental impairments would have no more than a minimal effect on his ability to work eight hours a day, five days a week in a workplace environment. *See* Orn, 495 F.3d at 639 (for a plaintiff's daily activities to support an adverse credibility determination, those activities must either contradict his testimony or show that the plaintiff is able to spend a substantial part of his day engaged in activities that bear a meaningful relationship to the activities of the workplace); *see also* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") Similarly, neither plaintiff's ability to perform part-time work -- namely, in-home health care for three hours a day three to five days a week (A.R. 72) -- for a period after his alleged onset date nor his praiseworthy efforts to contribute to his church -- by

sitting and talking with people and/or putting out pastries as needed -- are inconsistent with plaintiff's complaints of depression, anxiety, flashbacks, anger, and insomnia. Moreover, such activities do not evidence that plaintiff's mental impairments would have no more than a minimal effect on his ability to work eight hours a day, five days a week in a workplace environment.

With regard to the ALJ's third reason for discrediting plaintiff's subjective complaints -- plaintiff's failure to obtain regular and more aggressive treatment for his mental impairments -- the record shows that plaintiff was homeless, received food stamps, had no means of transportation, and was ineligible for benefits through the Veterans' Administration due to his other than honorable discharge from the army. (A.R. 58, 64-65, 71, 74.) Accordingly, plaintiff testified that obtaining more regular and aggressive treatment for his mental impairments was beyond his wherewithal, and Viola's willingness to provide his services pro bono was the only reason he was able to receive any mental health treatment at all. (*Id.* 74-75.) The ALJ may not discredit a plaintiff's subjective symptom testimony based on lack of treatment where treatment was beyond his means. *See* S.S.R. 96-7p; Orn, 495 F.3d at 638.

The ALJ's fourth reason for discrediting plaintiff's subjective complaints -- plaintiff's noncompliance with his prescription for Vicodin -- is also not germane to plaintiff's and Viola's statements about plaintiff's mental impairments, because the Vicodin prescription was for plaintiff's physical pain symptoms, not his mental well-being. Accordingly, plaintiff's failure to have his Vicodin prescription refilled does not establish that plaintiff's mental impairments were less severe than he claims.

The ALJ's last reason for discrediting plaintiff's subjective complaints -- plaintiff's own testimony -- is not supported by the record. The ALJ asserted that plaintiff's subjective complaints about his mental impairments were not credible because plaintiff testified that "his memory was good, and his concentration was fair . . . he gets along with people for the most part, and he could perform complex and simple instruction tasks." (A.R. 28; *see also* 66.) However, in choosing to

discredit plaintiff on this basis, the ALJ ignored findings in both Viola and Dr. Jordan's reports, which identified deficits in plaintiff's concentration and observed that plaintiff had very limited social relationships, and overlooked plaintiff's testimony that he has "spurts of anger and depression and lethargy" and has "frequent flashbacks" that leave him "incapacitated." (A.R. 66-67.)

In sum, the ALJ's reasons for discrediting plaintiff's above-mentioned subjective complaints were not supported by the record and germane to Viola's assessment of plaintiff's mental impairments. Consequently, the ALJ was not entitled to discredit Viola's opinion on the ground that it relied primarily on these complaints.

**V.   The ALJ's Error At Step Two Was Not Harmless.**

Defendant contends that the ALJ's error is harmless, because the ALJ "considered all of the functional limitations established by the reliable evidence" when he determined plaintiff's residual functional capacity. (Joint Stip. at 8-12.) However, the ALJ found that there was no reliable evidence that plaintiff had *any* functional limitations resulting from his mental impairments. (*See* A.R. 26-30.) In support of his decision, the ALJ indicated that plaintiff maintained that his alcoholism and substance abuse were in remission and that plaintiff's testimony was inconsistent with his subjective complaints about his mental impairments. (*See id.* 24, 28.) As explained in detail above, the ALJ's reasons for finding that plaintiff has no functional limitations arising from his mental impairments are not supported by the record.

Plaintiff did not maintain at the hearing, or elsewhere, that his alcoholism had been in remission for a year at the time of the hearing, and his testimony was not inconsistent with his subjective complaints about his mental impairments. To the contrary, plaintiff testified that he experiences "spurts of anger and depression and lethargy" and has "frequent flashbacks" that leave him "incapacitated," and both of the medical sources to examine him -- Viola and Dr. Jordan

16

-- opined that plaintiff experiences deficits in concentration and limited social relationships. Accordingly, the ALJ did not consider all of the functional limitations established by the reliable evidence, and as a result, it is not clear from the record that the ALJ's error at step two of the analysis was inconsequential to the ultimate nondisability determination. *See* Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This is particularly true in this case where plaintiff's advanced age and limited education limit the type of work he can perform.

**VI.    Remand Is The Appropriate Remedy.**

For the reasons stated above, there are outstanding issues that must be resolved about plaintiff's mental impairments and their effect on his residual functional capacity. However, although plaintiff is of advanced age and limited education, it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated. *See* Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012). Accordingly, remand is warranted.

Further, although the Court did not need to reach all issues raised in this case to determine that remand was appropriate, the ALJ will likely need to ensure on remand that plaintiff's credibility has been adequately addressed with respect to both his mental and physical impairments. If plaintiff has presented evidence of a severe mental impairment and there is no finding of malingering, the ALJ must articulate specific, clear and convincing reasons supported by substantial evidence for discrediting plaintiff's subjective testimony regarding the functional limitations associated with that impairment. *See* Burrell v. Colvin, 775 F.3d 1133 (9th Cir. 2014).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 17, 2015

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE